# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BRIAN MORSE, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> LIFE INSURANCE COMPANY OF ) <br> NORTH AMERICA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action Number <br> 2:18-cv-01681-AKK |

## MEMORANDUM OPINION AND ORDER

Brian Morse brings this action against Life Insurance Company of North America ("LINA") for breach of contract and bad faith, alleging that LINA wrongfully refused to pay him long term disability benefits. Doc. 1. LINA has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Morse's breach of contract claim is time barred by the limitations period included in the insurance policy and that Michigan law does not recognize bad faith as a separate and independent tort. *See* doc. 10. In light of the ambiguity of the contractual provision LINA cites in support for its limitations argument, the motion to dismiss the breach of contract claim is due to be denied. However, because LINA is correct that Michigan does not recognize bad faith as a separate tort, that claim is due to be dismissed.

1

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id*. (citations and internal quotation marks omitted). By contrast with Rule 8(a)'s fairly liberal pleading standard, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake."

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

However, a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citation omitted); *see* Fed. R. Civ. P. 12(d). "[T]he district court may always consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings." *Basson v. Mortgage Electronic Registration Sys., Inc.*, 741 F. App'x 770, 771-72 (11th Cir. 2018) (citing Fed. R. Civ. P. 10(c) and *Thaeter v. Palm Beach Cty. Sherriff's Office*, 449 F.3d 1242, 1352 (11th Cir. 2006)). Furthermore, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," meaning "the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276 (citation omitted). In determining whether a document is "central to the plaintiff's claim," the court may consider "whether the plaintiff would have to offer the document to prove his case." *Lockwood v. Beasley*, 221 F. App'x 873, 877 (11th Cir. 2006).

Here, LINA has attached six exhibits to its motion to dismiss, including a copy of the long-term disability policy at issue, Policy No. LK-980083, and six letters from LINA addressed to Morse and Morse's attorneys. *See* docs. 10-1, 10-2, 10-3,

10-4, 10-5, 10-6.[1] The policy document and the letters dated September 4, 2013, October 7, 2014, August 3, 2015, September 23, 2015, and September 21, 2017 were also attached to and referenced in the Complaint and are, therefore, undisputed and central to Morse's claims. *See* docs. 1 at 2, 4-6, 9; 1-1; 1-5; 1-9; 1-12; 1-14; 1-22. In ruling on this motion, the court did not consider LINA's October 25, 2012 letter informing Morse that it was terminating his benefits effective October 24, 2012. *See* doc. 10-1 at 2. Although its authenticity is uncontested, this letter was not attached to or referenced in the Complaint, and the court finds that Morse would not have to offer it to prove his claims. *See* docs. 1; *Lockwood*, 221 F. App'x at 877. Accordingly, the court has not converted the motion into a motion for summary judgment. *See Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1353 (S.D. Fla. 2015) (declining to convert a motion to dismiss where the court did not consider a disputed document that was not central to the plaintiff's claims).

## II. BACKGROUND

This action arises from a group insurance policy for long-term disability benefits issued by LINA to Morse's former employer, Michigan State University (MSU). *See* doc. 1 at 2. Under this policy ("the Policy"), eligible employees of MSU can receive long-term disability benefits if they satisfy the Policy's criteria for

---

[1] Exhibit D to the motion to dismiss contains two letters from LINA, dated August 3, 2015 and September 23, 2015. *See* doc. 10-4.

4

having a disability. *See* doc. 1-1 at 7-8. However, a policyholder's disability benefits terminate if and when LINA "determines he or she is not Disabled." *Id.* at 23. The Policy also provides for payment of additional benefits for Cost of Living Adjustment (COLA) and the MSU 403b Retirement Plan. *Id*. at 8. Finally, the Policy has a "Legal Action" provision which states:

> No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

*Id*. at 25.

While insured under the Policy, Morse was diagnosed with multiple impairments that prevented him from continuing to work. Doc. 1 at 2-3. The Social Security Administration subsequently determined that he qualified for Social Security disability benefits with a disability onset date of October 27, 2010. Doc. 1 at 3. On April 25, 2011, Morse began receiving long-term disability benefits under the Policy, which he continued to receive until October 24, 2012. *Id*. Following the termination of his benefits, Morse submitted four different appeals with updated medical information to LINA seeking to overturn its determination. *Id*. at 3-5. Morse prevailed finally on his fourth appeal, when, by letter dated August 3, 2015, LINA notified Morse's attorneys that LINA had overturned its prior determination and that Morse was "entitled to benefits payable under [the Policy] so long as [he] continue[s]

to meet the terms and conditions of the policy." Docs. 1 at 5; 1-12 at 2. In light of its decision, LINA subsequently issued a check payable to Morse for $1,305.00 in disability income for October 25, 2012 through April 24, 2013. *See* docs. 1 at 5-6; 1-13 at 2. The approval lasted only for a brief period, and, roughly six weeks later, LINA notified Morse that it had determined that he "no longer remained disabled as defined by [the Policy]" and "no further benefits" were due beyond April 24, 2013. Docs. 1 at 6; 1-14 at 2-3. Morse submitted two appeals to no avail, *see* doc. 1 at 8-9, and LINA refused to accept his third appeal because Morse had purportedly "not provided any additional new relevant medical documentation to refute [the] previous determinations." *Id.* at 10.

### III. ANALYSIS

Morse alleges that LINA breached the insurance contract by failing to provide all benefits owed to Morse for the October 24, 2012 through April 23, 2013 period, and by denying any benefits beyond that period. Doc. 1 at 11. Morse also alleges that LINA acted in bad faith by intentionally and unreasonably refusing to pay Morse's claim and delaying its review of his appeals. Doc. 1 at 12-13. The court addresses LINA's contentions in support of its motion to dismiss below.

#### A. **Breach of Contract**

LINA avers that the breach of contract claim is time-barred by the Policy's "Legal Action" provision, which purportedly imposes a three-year limit on legal

actions to recover benefits under the Policy. *See* doc. 1-1 at 25. Morse responds that either Michigan's or Alabama's six-year statutes of limitations for breach of contract, rather than the Policy, determines the limitations period for his claim. *See* doc. 14 at 6-7; Mich. Comp. Laws § 600.5807(8); Ala. Code § 6-2-34(9). The resolution of this issue hinges, in part, on which state's law governs this dispute.

1. Whether Michigan or Alabama Law Governs

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citation omitted). "In a contractual dispute, Alabama law . . . first look[s] to the contract to determine whether the parties have specified a particular sovereign's law to govern." *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). Absent "such a contractual specification," the court follows "the principle of *lex loci contractus*, applying the law of the state where the contract was formed." *Id.* "That state's law then governs unless it is contrary to the forum state's fundamental public policy." *Id.*

Here, it is undisputed that the Policy includes a choice-of-law provision, stating in part, "This Policy . . . is issued in Michigan and shall be governed by its laws." Doc. 1-1 at 15. Although "in most instances" Alabama courts consider "statutes of limitations . . . procedural matters" governed by the law of the forum,

*Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So. 3d 953, 957 (Ala. 2013), the issue before the court is not merely which state's statute of limitations applies, but the "validity and construction" of the contractual limitations provision—a substantive matter. *See Macey v. Crum*, 30 So. 2d 666, 669 (Ala. 1947) (holding that the "the validity and construction of the contract" is a substantive matter governed by the *lex loci contractus*). Moreover, where, as here, the parties have expressly "contracted with reference to the laws" of Michigan, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991), the application of Michigan law to resolve this issue is consistent with Alabama's longstanding "recogni[tion of] the right of parties to an agreement to choose a particular state's laws to govern an agreement," *Polaris Sales, Inc. v. Heritage Imports, Inc.*, 879 So. 2d 1129, 1133 (Ala. 2003). *See also Harper v. O'Charley's, LLC*, No. CV 16-0577-WS-M, 2017 WL 5598815, at *4 (S.D. Ala. Nov. 20, 2017) (noting that "Alabama law generally requires courts . . . to honor the parties' expressed intentions as to which state's law controls . . ." and applying the statute of limitations for the state specified by the contractual choice-of-law provision).

Furthermore, the application of Michigan law, which permits contractually shortened limitations periods, *see Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005), is not "contrary to [a] fundamental public policy" of Alabama that would otherwise compel the application of Alabama law. *See Stovall*, 893 So. 2d at

1102. "[I]n order for a policy to be considered fundamental it must be 'a substantial one' and 'may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.'" *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506-07 (Ala. 1991) (quoting the Restatement (Second) of Conflict of Laws § 187, cmt. (g) (1971)). Although Alabama statutory law voids agreements to shorten limitations periods to "less than that prescribed by law," *see* Ala. Code § 6-2-15, "that fact is not tantamount to saying that it would violate a fundamental public policy of Alabama for private parties to contract around" the six-year statute of limitations for breach of contract claims, *see Harper*, 2017 WL 5598815, at *4 (rejecting argument that enforcing indemnity provisions beyond the statutory period of repose contravened fundamental public policy). Indeed, that the Alabama Insurance Code requires certain disability insurance policies to include a three-year "legal action" limitations provision indicates that § 6-2-15 does not embody a "fundamental public policy" of the state. *See* Ala. Code § 27-19-14 (1975).[2] Finally, given that the

---

[2] Alabama Code § 27-9-14 requires certain disability insurance policies to contain a nearly identical provision to the one in the instant Policy, stating:
> There shall be a provision as follows:
> "Legal Actions: No action shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished."

However, this statutory provision does not apply to group policies like the one in this case. *See id.* § 27-19-1.

fundamental policy exception "is intended to be 'narrow and . . . applied only in rare circumstances,'" and given that this court is not aware of any Alabama court that has recognized § 6-2-15 as a "fundamental public policy," the court concludes that the fundamental policy exception does not apply here. *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1172 (N.D. Ala. 2012) (quoting 16 Am. Jur. 2d *Conflict of Laws* § 18 (2012)). Accordingly, Michigan law governs this issue.

## 2. Whether the Policy's Limitations Provision is Enforceable

The court turns now to the parties' respective contentions regarding the Policy's "Legal Action" provision. In particular, the court must decide whether the provision determines the limitations period of the breach of contract claim.[3] Under Michigan law, "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005);

---

[3] As an initial matter, Morse contends that the court must apply Michigan's six-year statute of limitations, Mich. Comp. Laws § 600.5807(8), rather than the Policy's three-year "Legal Action" provision. But, Michigan law permits contractually shortened limitations periods for three years and, therefore, the three-year limit is not "less than that permitted by" Michigan law. *See* doc. 1-1 at 35; *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005); Mich. Comp. Laws § 500.3422 (requiring disability insurance policies, including group policies, to include a three-year limitations provision for legal actions). And, at least one other federal court has found that similar contractual language did not compel the application of Michigan's six-year statute of limitations instead of an insurance policy's three-year limitations provision. *See Gipson v. Life Ins. Co. of N. Am.*, 529 F. Supp. 224, 225 (E.D. Mich. 1981) (construing provision stating "No [legal] action shall be brought after the expiration of three years (or the minimum time, if more than three years, permitted by law in the state where the insured resides) . . ."). Therefore, Morse's contention is unavailing.

*see Santino v. Provident and Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001) (noting that "Michigan courts have held that insurance contracts may contain shorter statutes of limitations"). A contractual provision may be ambiguous when two provisions "irreconcilably conflict with each other," *Klapp v. United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 453 (Mich. 2003), or "when it is equally susceptible to more than a single meaning," *Fluor Enterprises, Inc. v. Revenue Div., Dep't of Treasury*, 730 N.W.2d 722, 726 n.3 (Mich. 2007) (citation omitted) (emphasis in original). "If a policy contains ambiguous terms," the court must "construe the policy in favor of the insured and against the insurer." *Farm Bureau Mut. Ins. Co. v. Buckallew*, 246 Mich. App. 607, 612, 633 N.W.2d 473, 476 (2001). Furthermore, "Michigan law is clear that '[t]he burden of demonstrating the validity of the agreement is on the party seeking enforcement.'" *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 546 n.2 (6th Cir. 2007) (quoting *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 545 (Mich. Ct. App. 2007)).

The "Legal Action" provision of the Policy indicates that any legal action to recover under the Policy must be brought within "3 years after the time satisfactory proof of loss is required to be furnished." Doc. 1-1 at 35. However, the provision does not define when "satisfactory proof of loss is required to be furnished." *See id*. The Policy's "Proof of Loss" provision states, in part:

> Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance

11

> Company within 90 days after the date of the loss for which a claim is made. . . . Written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, that the loss continues must be furnished to the Insurance Company at intervals required by us. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to the Insurance Company.

*Id.* at 34. Relying on the first sentence of the "Proof of Loss" provision, LINA contends that "satisfactory proof of loss" was required to be furnished 90 days after "the date of the loss for which a claim is made," and that "the date of the loss" is the alleged disability onset date, which, in this case, is October 27, 2010. *See* docs. 10 at 14; 1-1 at 34; 1 ¶¶ 8-9. Therefore, LINA contends Morse had a deadline of January 25, 2011 to provide "satisfactory proof of loss." *See* docs. 10 at 14; 1-1 at 34.

However, these provisions are ambiguous and, thus, unenforceable for two reasons. First, it is not clear that the 90-day requirement in the "Proof of Loss" provision determines the deadline for furnishing "satisfactory proof of loss." Indeed, by stating that "proof . . . that the loss continues must be furnished to the Insurance Company at intervals required by us," the provision suggests that the deadline for furnishing "satisfactory proof of loss" may be determined by undefined "intervals" where, as here, the alleged loss is continuous. Furthermore, other provisions of the Policy suggest that "satisfactory proof of loss" for an alleged continuing loss is not governed by the 90-day requirement in the "Proof of Loss" provision. For instance, the "Description of Benefits" states, in part, "The Employee . . . must provide the

12

Insurance Company . . . satisfactory proof of Disability before benefits will be paid. . . . The Insurance Company will require continued proof of the Employee's Disability for benefits to continue." Doc. 1-1 at 29. The court cannot ignore these other provisions because "an insurance contract should be read as a whole and meaning should be given to all terms." *See Royal Property Group, LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 432 (Mich. Ct. App. 2005).

Second, assuming that LINA is correct that "satisfactory proof of loss" is required "within 90 days of the date of the loss for which a claim is made," the Policy is ambiguous because it does not define or otherwise explain how to determine "the date of the loss." If, as LINA contends, "the date of the loss" means the alleged disability onset date for a claim, this would potentially yield absurd results. As Morse acknowledges, where the insured's claim involves a "continued Disability," such an interpretation would essentially immunize LINA from contractual liability for any actions taken three years and ninety days after the alleged disability onset date. *See* doc. 14 at 6. In this case, for example, it would mean that Morse would be held to a filing deadline of January 25, 2014, even though he successfully appealed and, on August 3, 2015, LINA granted him benefits for October 25, 2012 to April 24, 2013. Such a reading would perhaps incentivize LINA to string along its insured through the appeals process and then to claim subsequently that the insured's claims are time barred because she failed to file suit within three years and 90 days of her

alleged onset date. Therefore, because "contracts must be construed consistent with common sense and in a manner that avoids absurd results," the court cannot conclude that "the date of the loss" constitutes the alleged disability onset date. *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 636 (6th Cir. 2006) (citing *Parrish v. Paul Revere Life Ins. Co.*, 302 N.W.2d 332, 333 (Mich. Ct. App. 1981)).

The court's finding that the Policy's limitations provision is ambiguous is consistent with other courts' interpretations of similar language in disability insurance policies. For instance, in *Hess v. Metro Life Insurance Company*, the Eastern District of Michigan declined to enforce an ambiguous limitations provision against a plaintiff seeking to recover long-term disability benefits under ERISA. No. 13-CV-10696, 2013 WL 12149279, *1-2 (E.D. Mich. Oct. 21, 2013). The defendant's policy required "legal action on a claim" to be brought before "3 years after the date . . . Proof is required." *Id*. at *1. Similar to the instant Policy, the policy's "Proof" provision further required, in part, that the claimant "give . . . Proof not later than 90 days after <u>the date of the loss</u>," but that "delay will not cause a claim to be denied or reduced if such . . . Proof [is] given as soon as is reasonably possible." *Id*. at *2 (emphasis added). Rejecting the defendant's contention that "loss" meant "the first day of disability," the court found that "the plan language . . . is unclear and ambiguous," noting that "critical terms" like "loss" were "not clearly defined,"

14

and that the policy's statement that delays will be excused if proof is provided "as soon as is reasonably possible" made the deadline for proof ambiguous. *Id*. at *2-3.

Additionally, in *Wernimont v. Prudential Insurance Company of America*, the Western District of Michigan, applying Michigan law to the plaintiff's ERISA claim, declined to enforce a disability insurance policy's limitations provision that also prohibited legal action to recover under the policy "more than three years after the end of the time within which proof of loss is required." No. 1:13-CV-937, 2015 WL 328603, *4 (W.D. Mich. Jan. 26, 2015). Critically, the policy stated that, for long-term disability coverage, two "time limits must be met:

> (1) Initial proof of loss must be furnished within 90 days after the end of the first month following the Elimination Period.
> (2) Proof for each later month of continuing loss must be furnished within 90 days after the end of that month."

*Id*. at *2. The court held that where the insured's loss was "continuing," and he had "purportedly not yet reached the 'last month' of his loss," the Policy was "unclear as to when the time limit ends." *Id*. at *4.

By contrast, the cases that LINA cites involved policies that are distinguishable from the Policy here. *See* docs. 10, 16. First, LINA cites *Andrzejewski v. Metropolitan Life Ins. Co.*, in which the Eastern District of Michigan enforced a policy's three-year limitations provision that unambiguously defined the point at which a claim accrued. No. 06-11242, 2006 WL 2943300, *2 (E.D. Mich. Oct. 13, 2006). The defendant's policy provided that accrual occurred at "the time

15

written proof of loss is required to be given," but, unlike the instant Policy, explained that, "Written proof of loss must be sent to [the insurer] within 90 days after <u>the end of a period for which [the insured] claim[s] benefits</u>. . . ." *Id.* (emphasis added). Similarly, in *Tate v. Paul Revere Life Insurance Company*, which LINA also cites, the Eastern District of Michigan enforced a limitations provision that was unambiguous. No. 05-70438, 2005 WL 1861933, *4 (E.D. Mich. Aug. 3, 2005). The policy prohibited legal action "after 3 years from the date written proof of loss is required" and, like in *Andrzejewski*, unambiguously defined the deadline for "written proof of loss": "Written proof of loss must be sent to [the insurer] within 90 days after <u>the end of each period for which [the insured is] claiming benefits</u>." *Id.* at *3 (emphasis added). Finally, LINA cites three other cases that enforced three-year limitations provisions in disability insurance policies under Michigan law. *See Santino v. Provident Life and Acc. Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001); *Gipson v. Life Ins. Co. of N. Am.*, 529 F. Supp. 224, 225 (E.D. Mich. 1981); *Poniewierski v. Unum Life Assur. Co. of Am.*, No. CIV. 05-72431, 2006 WL 2385045, at *4 (E.D. Mich. Aug. 17, 2006). However, these cases are not instructive on this issue because they do not explain how the policies defined the deadline for the "proof of loss" that triggered the policies' limitations provisions. *See id.*

Therefore, in light of these authorities and the Policy's ambiguous language, LINA has failed to show that the limitations provision is enforceable and that it bars

16

Morse's breach of contract claim. As such, the motion to dismiss is due to be denied, and it is unnecessary for the court to address Morse's contention that LINA is equitably estopped from enforcing the provision.

**B. <u>Bad Faith</u>**

LINA also contends that Morse's bad faith claim fails because Michigan law does not recognize actions in tort for bad faith refusal to pay or settle an insurance claim. Morse tersely responds by asserting, without citing any authority, that he "rightfully brought a claim" for bad faith. Doc. 14 at 8. Michigan law disagrees with Morse.

1. <u>Whether Michigan or Alabama Law Governs</u>

In order to determine which state's law governs the bad faith claim, the court must first "characterize the legal issue and determine whether it sounds in torts [or] contracts . . ." *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). "In making this determination, this court is bound to decide the way it appears the Alabama Supreme Court would decide." *Ferris v. Jennings*, 851 F. Supp. 418, 421 (M.D. Ala. 1993) (citing *Shapiro v. Associated Intern. Ins. Co.,* 899 F.2d 1116, 1118 (11th Cir. 1990)). The Alabama Supreme Court has repeatedly indicated that a bad faith claim premised on an insurer's refusal to pay an insurance claim sounds in tort, not contract. *See*, *e.g.*, *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013) ("[T]here is

17

only one tort of bad-faith refusal to pay a claim . . .") (emphasis omitted); *ALFA Mut. Ins. Co. v. Smith*, 540 So. 2d 691, 692 (Ala. 1988) (holding that Alabama Code § 6-2-38(*l*), the two-year statute of limitations for "[a]ll actions for any injury . . . not arising from contract and not . . . enumerated," governs bad faith claims). For tort claims, Alabama applies the doctrine of *lex loci delicti*, which provides that the law of the state where the injury occurred governs the injured party's substantive rights. *Ex parte U.S. Bank Nat'l Ass'n*, 148 So. 3d 1060, 1069 (Ala. 2014) (citation and quotation marks omitted).

LINA contends that the place of injury for Morse's bad faith claim was Michigan because Morse received LINA's initial and subsequent denials of benefits at his residence in Michigan and allegedly suffered financial hardship in Michigan. *See* doc. 10 at 12-13. Morse does not dispute this contention, which the Complaint and attached exhibits seem to corroborate. *See* doc. 14; docs. 1 at 1 (alleging that Morse is a Michigan citizen); 1-2 at 2 (addressing November 2011 Social Security Administration letter to Morse in Michigan). Indeed, LINA sent the letter concluding that "no further benefits were due" beyond April 24, 2013 to Morse at a Michigan address, and Morse's attorney subsequently confirmed that this letter was "sent directly to [Morse]." Docs. 1-14 at 2; 1-16 at 2. Therefore, the injury occurred in Michigan and Michigan law governs Morse's bad faith claim. *See Ex parte U.S. Bank Nat'l Ass'n*, 148 So. 3d at 1069.

## 2. Whether the Bad Faith Claim is Cognizable Under Michigan Law

As LINA notes, "Michigan courts—and federal courts applying Michigan law—have long held that breach of a contract, even if done in bad faith, does not give rise to a separate and independent tort." *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008 (E.D. Mich. 2015). In other words, "[a]n alleged bad-faith breach of an insurance contract does not state an independent tort claim." *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006) (citing *Kewin v. Massachusetts Mut. Life Ins. Co.* 295 N.W.2d 50, 55 (Mich. 1980)). Rather, "Michigan law recognizes a tort claim only when a plaintiff's complaint alleges 'the breach of duties existing independent of and apart from' the contract of insurance." *Soc'y of St. Vincent De Paul in Archdiocese of Detroit v. Mt. Hawley Ins. Co.*, 49 F. Supp. 2d 1011, 1019-20 (E.D. Mich. 1999) (quoting *Hearn v. Rickenbacker*, 400 N.W.2d 90, 94 (Mich. 1987)). However, where, as here, a plaintiff asserting a bad faith claim does not allege "that a relationship exists between it and Defendant independent of and apart from their contractual relationship," the plaintiff has failed to state a claim on which relief can be given. *See*, *e.g.*, *id.* at 1019-20 (dismissing claim for "bad faith breach of insurance contract"); *Lee v. Liberty Mut. Ins. Co.*, No. 11-14998, 2013 WL 6095479, *2-3 (E.D. Mich. Nov. 20, 2013) (same); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 401-02 (Mich. Ct. App. 2006) (denying motion to amend complaint to add bad faith claims because "they fail to state an

action independent from [the] breach of contract claim."). Therefore, Morse has failed to state a claim for bad faith.

**IV. CONCLUSION AND ORDER**

For all these reasons, LINA's motion to dismiss is **GRANTED** as to the bad faith claim, and **DENIED** as to the breach of contract claim.

**DONE** the 2nd day of July, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE